Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2157 | **DATE** | 8/17/2001 |
| **CASE TITLE** | Brian Fogarty vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions (13-1, 16-1, and 17-1) to dismiss are granted in part and denied in part. Enter memorandum opinion and order.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 2 0 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 29 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 17 PM 2:03 | | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRIAN FOGARTY, )
)
    Plaintiff, )
) 01 C 2157
    v. )
) Judge George W. Lindberg
CITY OF CHICAGO, a municipal corporation, )
PAUL BREWSTER and EMMA MITTS, )
individually, )
)
    Defendants. )

**DOCKETED**
**AUG 2 0 2001**

**MEMORANDUM OPINION AND ORDER**

Defendants City of Chicago ("City"), Paul Brewster, and Emma Mitts, have each moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss portions of plaintiff Brian Fogarty's complaint, which alleges claims of political affiliation discrimination, race discrimination, and retaliation. The court consolidates its rulings on all three motions. For the reasons stated below, the motions are granted in part and denied in part.

**I. Factual Background**

The court must accept as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. Jewel Marshall-Mosby v. Corporate Receivables, Inc., 194 F.3d 830, 833 (7th Cir. 1999). According to the allegations in the complaint, plaintiff began working for the City on March 23, 1995 as a laborer in the Department of Streets and Sanitation, Bureau of Street Operations, Graffiti Removal, District 3. Plaintiff is white, and is active in 11th Ward politics. Defendant Brewster was the District Supervisor of District 3, and defendant Mitts was a floating supervisor who covered District 3 as part of her

responsibilities. Brewster and Mitts are active in 29th Ward politics, where Mitts was the campaign manager for aldermanic candidate Isaac Carouthers.

In December 1998, Brewster asked plaintiff to purchase tickets to a political fundraiser for Carouthers. Plaintiff declined. In March or April 1999, Brewster and Mitts asked plaintiff to use a vacation day to work in the 29th Ward on Election Day. At that time, Brewster told plaintiff that "job security and clout are good things to have." Plaintiff again declined. During 1999, the City moved plaintiff to a less desirable location, gave him the least desirable work assignments, and refused to allow him to work overtime, while other employees who supported Carouthers or were not white were treated more favorably.

On June 22, 1999, plaintiff was injured at work. The next day, plaintiff met with Brewster to give him a doctor's report. At that time, Brewster told plaintiff that he should consider transferring when he returned from his medical leave because plaintiff did not support Carouthers, and indicated that plaintiff was not the right color to work in District 3. Plaintiff returned to work at District 3 on August 16, 1999, but remained under medical care. Shortly after plaintiff returned, Brewster told plaintiff that plaintiff was scheduled to testify at a hearing the next day, on a subject not known to Brewster. At the hearing, plaintiff learned that his work assignment partner, Willie Thomas, was accused of taking payments for work done with City equipment on City time. Plaintiff also learned that Mitts had claimed that plaintiff had informed her of Thomas's activities. Plaintiff stated at the hearing that Mitts' statement was false, and that he had never observed Thomas accepting money for work. When ordered by the hearing officer and the personnel director to transfer plaintiff to another work assignment partner for plaintiff's safety, Brewster assigned plaintiff to work with Thomas' brother.

2

In September 1999, Brewster called plaintiff into his office to speak with the personnel director, John Hornecki, regarding Thomas. Brewster suggested to plaintiff that plaintiff tell Hornecki what he wanted to hear, because Hornecki would take plaintiff's job. Plaintiff told Hornecki the same things he had said at the hearing. Hornecki told plaintiff that "this isn't something that is going to wash away," that he would give plaintiff three days to think about things, and that Hornecki had better like what plaintiff had to say then. After the meeting with Hornecki, Brewster told plaintiff that he had better have a new story for Hornecki, because "someone has to hang for this."

On October 28, 1999, the day following plaintiff's release from medical care, Brewster issued plaintiff a written reprimand for infractions including insufficient effort; failing to report actions of Rick Rundle, an employee who had also refused to support Brewster's candidate; leaving a work site without authorization; failing to return to work on time from breaks, lunch, or rest periods; making false, inaccurate, or deliberately incomplete statements in an official inquiry; and failing to take necessary action to complete an assignment. When plaintiff asked to speak to his union representative, Brewster told him that he would have plaintiff fired if he spoke with anyone in the union or the 11th Ward about the reprimand.

On October 29, 1999, plaintiff filed a written grievance with Brewster, claiming discrimination based on his race, nationality, and gender. Plaintiff also claimed retaliation based on his refusal to support Brewster's and Mitts' choice of political candidate.

On November 3, 1999, the City terminated plaintiff's employment, citing plaintiff's attendance. According to plaintiff, at the time of his termination, he had not used all the days allocated to him by the City, and his performance always met or exceeded the City's expectations

3

throughout his employment with the City.

## II. Motion to Dismiss Standard

When ruling on a motion to dismiss, the court must consider "whether relief is possible under any set of facts consistent with the allegations of the plaintiff's complaint." Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999). That is, if it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate. See Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995). "[A]lthough plaintiffs can plead conclusions, the conclusions must provide the defendant with at least minimal notice of the claim." Jackson v. Marion County, 66 F.3d 151, 154 (7th Cir. 1995). A plaintiff can "plead himself out of court by alleging facts which show that he has no claim." Id.

## III. Section 1983 Claims (Counts I and II,[1] IV through VI)

As to Count I, alleging that defendant City of Chicago discriminated against plaintiff on the basis of his political affiliation in violation of 42 U.S.C. § 1983, the City argues that plaintiff fails to allege facts supporting a discriminatory City custom or policy. A municipality may not be held liable under Section 1983 under a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, to state a claim against the City, plaintiff must allege that: (1) the City had an express policy that, when enforced, caused a constitutional deprivation; or (2) the City had a widespread practice that was so permanent and well-settled as to constitute a custom or usage with the force of law, although not authorized by written law or express municipal policy; or (3) the constitutional injury was caused by a person with final policymaking

---

[1] Mitts does not move to dismiss Count III.

4

authority. McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). Plaintiff relies on the second method of stating a claim, alleging that the City, "by the actions alleged herein, has intentionally discriminated against Fogarty on the basis of his political affiliation as a matter of custom by subjecting him to unequal and discriminatory terms and conditions of employment as well as terminating his employment because he refused to support Carouthers."

There is no heightened pleading standard in civil rights cases alleging Section 1983 municipal liability. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); see also McCormick v. City of Chicago, 230 F.3d 319, 323 (7th Cir. 2000). However, a complaint must set forth sufficient allegations to allow the court and defendants to understand the gravamen of the complaint. See McCormick, 230 F.3d at 323-24. Here, plaintiff has alleged that following his refusal to support political candidate Carouthers, the City moved plaintiff to a less desirable location; gave him the least desirable work assignments; refused to allow him to work overtime; and ultimately discharged him. At the same time, according to plaintiff, other employees who supported Carouthers were treated more favorably. Plaintiff then concludes that by these actions, the City discriminated against him on the basis of his political affiliation "as a matter of custom." The addition of the allegation of a "custom," designed, no doubt, as an attempt to clear the liberal notice pleading hurdle, is inconsistent with plaintiff's allegations that are limited to what City employees did to him. Indeed, the complaint contains no allegations of any kind that support plaintiff's conclusion that the City had a custom of discrimination. While the federal notice pleading rules do not require much, they require more than appears in this complaint. Accordingly, Count I is dismissed without prejudice.

Brewster initially argues that Count II, alleging political affiliation discrimination under

5

Section 1983, should be dismissed because Section 1983 does not confer substantive rights.[2] All the defendants make the same argument regarding Counts IV through VI, which allege retaliation in violation of Section 1983. However, while plaintiff's characterization of his claims as violations of Section 1983 may be somewhat inartful, it is clear from reading the complaint as a whole that he is raising First Amendment claims under Section 1983.

Brewster then argues that Count II fails to state a claim under the First Amendment. To state a Section 1983 claim based on a First Amendment violation, a plaintiff must allege that: (1) his conduct was constitutionally protected, and (2) his conduct was a substantial or motivating factor in the defendant's challenged action. Kelly v. Municipal Courts, 97 F.3d 902, 911 (7th Cir. 1996). An employee's decision to refuse to participate in political activity is constitutionally protected conduct. Id. Conduct by an employer that has been held to violate the First Amendment includes firing a nonpolicymaking public employee based on his political affiliation, see, e.g., Elrod v. Burns, 427 U.S. 347 (1976); Cusson-Cobb v. O'Lessker, 953 F.2d 1079, 1080 (7th Cir. 1992), as well as discriminating against an employee based on his political affiliation in promotion, transfer, recall, and hiring decisions. See, e.g., Rutan v. Republican Party of Ill., 497 U.S. 62 (1990). Here, plaintiff has alleged that he refused to support aldermanic candidate Carouthers by purchasing tickets for a political fundraiser and using vacation time to work on Election Day at Brewster's request. Plaintiff further alleges that his refusal to participate in these political activities resulted in his being discriminated against in his work activities and in being terminated by Brewster. Plaintiff has stated a cause of action in Count II sufficient to withstand a

---

[2] Brewster also argues that all claims made against him in his official capacity should be dismissed. However, it is clear from the caption of the case that he is being sued as an individual.

Rule 12(b)(6) motion to dismiss.

Defendants next contend that plaintiff's claims of retaliation under Section 1983 should also be dismissed for failure to state a claim under the First Amendment. In Counts IV through VI, the complaint alleges that plaintiff "engaged in activity protected by the provisions of § 1983 by complaining of discrimination based on his political affiliation," and that the City, Brewster, and Mitts then retaliated against him by terminating his employment. Presumably the complaint of discrimination referenced in these claims is the written grievance plaintiff filed with Brewster, complaining "that he was being discriminated against in the terms and conditions of his employment based on his race, nationality and sex," and "that he was being retaliated against because of his refusal to support Brewster and Mitts' choice of political candidates." Thus, the issue is whether retaliation based on the filing of a grievance complaining of political affiliation discrimination states a claim under the First Amendment.[3]

As the first step in the analysis of an allegation of retaliation for a violation of the First Amendment, the court must determine whether the speech at issue implicates a matter of public concern. Connick v. Myers, 461 U.S. 138, 146 (1983). To determine whether a grievance touched on a matter of public concern, the court considers the content, form, and context of the grievance. See id. at 147-48; Gray v. Lacke, 885 F.2d 399, 412 (7th Cir. 1989), cert. denied, 494 U.S. 1029 (1990). The public concern element is lacking where the conduct "concerns a subject

---

[3] Curiously, even while emphasizing the distinction between his discrimination and retaliation claims, in his response to the motions to dismiss plaintiff recharacterizes his retaliation claims as claims of retaliation based on plaintiff's political affiliation. The effect of this recharacterization is that plaintiff's retaliation claims essentially duplicate his discrimination claims. The plain language of the complaint, by contrast, alleges claims of retaliation based on plaintiff's act of filing a grievance, that is, retaliation for exercising his right to speak. The court evaluates what is contained in the complaint.

7

of public interest but the *expression* addresses only the personal effect upon the employee." Cliff v. Bd. of School Comm'rs, 42 F.3d 403, 410 (7th Cir. 1994) (quoting Marshall v. Porter County Plan Comm'n, 32 F.3d 1215, 1219 (7th Cir. 1994)) (emphasis in original). While there are circumstances in which a complaint of discrimination raised in a grievance may well be a matter of public concern, in this case plaintiff fails to allege that his grievance implicated such a public concern. Indeed, his complaint of discrimination against him based on his failure to support a political candidate indicates that his motivation was purely private – to vindicate his rights and resolve a private dispute. Plaintiff's claims of retaliation under Section 1983 brought in Counts IV through VI are dismissed without prejudice.

**IV.    Section 1981 Claims (Counts VII through XII)**

The City next contends that Count VII, alleging race discrimination under 42 U.S.C. § 1981, and Count X, alleging retaliation under Section 1981, should be dismissed because Section 1981 does not provide a direct cause of action against a municipality. However, this court need not reach that issue here because, as under Section 1983, there is no liability under the doctrine of respondeat superior under Section 1981. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735-36 (1989); see also, e.g., Looper Maint. Serv. Inc. v. City of Indianapolis, 197 F.3d 908, 913 (7th Cir. 1999); Federation of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1214-15 (9th Cir. 1996). Counts VII and X suffer from the same deficiency as Count I, and therefore those counts are dismissed without prejudice.

Brewster argues that Counts VIII and XI, alleging violations of Section 1981 based on discrimination and retaliation, should be dismissed because they do not allege an impairment of plaintiff's right to make or enforce a contract. Brewster does not dispute that an at-will

8

employment relationship, such as plaintiff and the City had here, constitutes a contract. Rather, he contends that plaintiff's claims fail because he does not allege that he is a member of a racial minority and because the discriminatory acts plaintiff alleges do not involve interference with contract rights. Brewster's contentions are misplaced.

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. 1981(b). Contrary to Brewster's contention, plaintiff does allege that he is a member of a racial minority, albeit somewhat obliquely, when he alleges that his "rights as a Caucasian citizen are protected by the provisions of § 1981." Moreover, plaintiff does allege racial discrimination in the enjoyment of the benefits, privileges, terms, and conditions of the contractual relationship. Plaintiff alleges that Brewster intentionally subjected plaintiff to unequal and discriminatory terms and conditions during his employment based on race, and that Brewster terminated plaintiff's employment several days after plaintiff filed a written grievance with Brewster complaining of discrimination and retaliation. Plaintiff adequately states claims of discrimination and retaliation under Section 1981.[4]

Mitts argues that Counts IX and XII, alleging race discrimination and retaliation in violation of Section 1981, fail to adequately state claims against her. Relevant to these counts, plaintiff alleges that Mitts was a floating supervisor who covered the district where plaintiff worked; that Mitts intentionally subjected plaintiff to unequal and discriminatory terms and

---

[4] Brewster also argues that Count XI should be dismissed because plaintiff claims that he was retaliated against for filing his EEOC complaint, when that complaint was filed after he was terminated. However, it is clear from the complaint that plaintiff claims that he was retaliated against for filing his grievance before he was terminated.

conditions during his employment based on his race; that plaintiff complained of race discrimination; that Mitts thereafter retaliated against plaintiff by terminating his employment; and that the decision to terminate plaintiff was based on his race. These allegations are adequate to withstand a Rule 12(b)(6) motion to dismiss. Therefore, Mitts' motion to dismiss Counts IX and XII is denied.

### V. Title VII Claims (Counts XIII and XIV)

The City next argues that Count XIII, alleging race discrimination under Title VII, 42 U.S.C. § 2000e et. seq., and Count XIV, alleging retaliation in violation of Title VII, should be dismissed because the allegations contained in those counts are time-barred and outside the scope of plaintiff's EEOC charge. In Illinois, a charge must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred that forms the basis for the charge. 42 U.S.C. § 2000e-5(e). Plaintiff filed his EEOC charge on August 28, 2000. The City maintains that any acts occurring prior to November 2, 1999 – the 300th day before August 28, 2000 – are time-barred. According to the City, only plaintiff's termination on November 3, 1999 would fall within the limitations period.[5]

Plaintiff invokes the continuing violation doctrine to support his argument that allegations arising outside the 300-day limit may form a basis for relief under Title VII. Under the continuing violation doctrine, otherwise time-barred acts may form the basis for Title VII relief if they are linked to a discriminatory act that occurred within the limitations period. Speer v. Rand McNally & Co., 123 F.3d 658, 663 (7th Cir. 1997); Selan v. Kiley, 969 F.2d 560, 564 (7th Cir.

---

[5] Although the City contends that the allegation of plaintiff's termination cannot be considered in an evaluation of Count XIII because plaintiff failed to reallege the paragraph containing that allegation in Count XIII, the court reviews the complaint as a whole.

1992). The doctrine may apply in three types of cases: (1) "where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the 'violation' occurred"; (2) where the employer has an express, openly-espoused discriminatory policy of personnel management; or (3) where the employer has a covert practice of discrimination so that "the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts." Selan, 969 F.2d at 565; Stewart v. CPC Int'l, Inc., 679 F.2d 117, 120-21 (7th Cir. 1982). It is this third situation that plaintiff contends applies here.

Generally, a continuing violation will be found if the plaintiff had no reason to believe he was a victim of discrimination until after a series of adverse actions has occurred. Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1058 (7th Cir. 1994). However, a continuing violation will not be found "if the plaintiff knew, or 'with the exercise of reasonable care would have known after each act that it was discriminatory and had harmed' her[.]" Id. Here, plaintiff filed a grievance on October 29, 1999, complaining of racial discrimination in the terms and conditions of his employment. Plaintiff's act of filing a grievance on October 29, 1999 belies his argument that he was not aware of the discrimination until he was discharged on November 3, 1999. Accordingly, the court finds that plaintiff may not use the continuing violation doctrine to base his Title VII discrimination claim on incidents occurring prior to November 2, 1999. Although plaintiff may have a difficult time prevailing on Count XIII, since no incident alleged in the complaint other than his discharge falls within the 300-day limit, at this early stage the court declines to dismiss this count completely. See Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) (an allegation that "I was turned down for a job because of my race" would be sufficient to withstand motion to dismiss under Rule 12(b)(6)).

11

The result of this analysis is somewhat different when applied to plaintiff's claim of retaliation in violation of Title VII alleged in Count XIV. There, plaintiff could not have known of any retaliation based on his act of filing a grievance until he was discharged. As to that claim, plaintiff may be able to support a continuing violation argument. The City's motion to dismiss Count XIV as time-barred is denied.

The City also maintains that the Title VII claims alleged in Counts XIII and XIV must be dismissed because they exceed the scope of plaintiff's EEOC charge. A plaintiff may not make a claim under Title VII that he did not include in his underlying EEOC charge. McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 481 (7th Cir. 1996). This rule, however, does not require a Title VII plaintiff to have included in the EEOC charge every fact supporting his claim. Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). Rather, the claim in the complaint must simply be "like or reasonably related to the allegations" of the underlying EEOC charge, and grow out of those allegations. Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir.), cert. denied, 429 U.S. 986 (1976). In plaintiff's EEOC charge at issue here, while he did not allege some of the incidents alleged later in his complaint, he did charge retaliation and race discrimination. The claims in his complaint are reasonably related to that charge.

**ORDERED:** The City of Chicago's motion to dismiss is granted as to Counts I, IV, VII, and X; is granted in part and denied in part as to Count XIII; and is denied as to Count XIV. The City of Chicago's motion to dismiss Counts XV and XVI is denied as moot, since plaintiff has withdrawn those counts. Brewster's motion to dismiss is granted as to Count V and denied as to Counts II, VIII, and XI. Mitts' motion to dismiss is granted as to Count VI and denied as to

Counts IX and XII. Plaintiff is given thirty days from the entry of this order to amend Counts I, IV through VII, X, and XIII; failure to do so will result in their dismissal with prejudice. The City's and Mitts' motion to hold their answers in abeyance is granted as to Count III and denied as moot as to the remaining counts. Plaintiff's request for judgment to be entered on Count III is denied.

ENTER:

*[signature: George W. Lindberg]*

George W. Lindberg
United States District Judge

DATED: AUG 17 2001