# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2157 | **DATE** | 5/13/2002 |
| **CASE TITLE** | | Fogarty vs. City of Chicago | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, the City's Motion to Dismiss Amended Complaint [dkt # 49], Brewster's Motion to Dismiss Count V of Plaintiff's First Amended Complaint [dkt # 46], and Mitts' Motion to Dismiss Amended Complaint [dkt # 48] are granted in part and denied in part as follows: Counts VII and X of the Amended Complaint are dismissed with prejudice; Counts IV, V and VI are dismissed without prejudice; and the motions to dismiss Counts I, II, IX, XII and XIV are denied. Any motion to file a further amended complaint must be made on or before June 3, 2002. A copy of the proposed amended complaint must be attached to the motion. Any further amended complaint shall not renumber the various counts. Geraldine Soat Brown

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | MAY 14 2002 | | 70 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Mail AO 450 form. | | 5/13/2002 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| tw | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | | |



BRIAN FOGARTY,
           **Plaintiff,**

     v.

CITY OF CHICAGO, et al.,
           **Defendants.**

Cause No. 01 C 2157

Magistrate Judge Geraldine Soat Brown

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian Fogarty filed an amended complaint alleging various claims under 42 U.S.C. §§ 1981, 1983, and 2000 *et seq*. The defendants have filed motions to dismiss certain counts of that amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set out herein, the defendants' motions are granted in part and denied in part, as set out in Appendix A hereto.

### PROCEDURAL BACKGROUND

Plaintiff Brian Fogarty ("Fogarty") filed an initial complaint alleging that defendants City of Chicago ("City"), and two Chicago Department of Streets and Sanitation supervisors, Paul Brewster ("Brewster") and Emma Mitts ("Mitts") discriminated against him on the basis of his political affiliation and race during his employment as a laborer in the City of Chicago Department of Streets and Sanitation, and discharged him in November 1999 in retaliation for his complaints about that discrimination. (Compl.) [Dkt # 1.] The defendants filed motions to dismiss portions of Fogarty's initial complaint pursuant to Rule 12(b)(6). [Dkt ## 13, 16, 17.] District Judge George W. Lindberg granted those motions in part and denied them in part, but gave Fogarty leave to amend the dismissed

1

counts. *Fogarty v. City of Chicago*, No. 01 C 2157, 2001 WL 946477 (N.D. Ill. Aug. 20, 2001)(Lindberg, J.). [Dkt # 29.]

Fogarty filed an Amended Complaint [Dkt 39], and the defendants have filed motions to dismiss parts of that amended complaint. [Dkt ## 46, 48, 49]. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1) and Local Rule 73.1. [Dkt ## 40, 41, 42.] Accordingly, this ruling is the final decision on these motions.

The allegations of the Amended Complaint.

The Amended Complaint alleges the following. Fogarty was hired by the City on March 23, 1995 as a laborer in District 3 of the Department of Streets and Sanitation, Bureau of Street Operations, Graffiti Removal ("District 3"). Fogarty is a Caucasian who is "active in 11th Ward [Chicago] politics." (Am. Compl. ¶¶ 4-5, 8.) During the relevant period, defendant Brewster was District Supervisor of District 3 and defendant Emma Mitts was a floating supervisor whose responsibilities included District 3. Defendants Brewster and Mitts both are African-American, and both are "active in 29th Ward [Chicago] politics." (Am. Compl. ¶¶ 6-7.) Fogarty alleges that his work performance met or exceeded the City's expectations throughout his employment in this job. (Am. Compl.¶ 8.)

In December 1998 Brewster solicited contributions from Fogarty and other District 3 employees for the political campaign of Isaac Carouthers, an African-American who was then running for the office of alderman of the 29th Ward. Fogarty, along with "a few" other employees, declined to make a contribution. (Am. Compl. ¶ 9.) Shortly before election day for the aldermanic post, Brewster and Mitts (who was Carouther's campaign manager) also asked Fogarty to take election day as a vacation day and "work in the 29th Ward." Brewster told Fogarty that "'job security

2

and clout are good things to have' as a seasonal employee." Again Fogarty declined. (Am. Compl. ¶ 10.)

Fogarty alleges that the City, "[t]hroughout 1999," subjected "employees who did not support Carouthers, including Fogarty," to different terms and conditions of employment from employees who "supported Carouthers and/or are non-Caucasian." (Am. Compl. ¶ 11.) Specifically as to Fogarty himself, the City discriminated against him by, among other things, moving him to "a less desirable location" and "the least desirable work assignments," and by refusing to allow Fogarty to work overtime, while "treating more favorably" supporters of Carouthers and others "outside of Fogarty's protected class." (*Id.*)

In June 1999, Fogarty suffered a work-related injury and was off work for two months. (Am. Compl. ¶ 12.) When Fogarty began medical leave Brewster told him that Fogarty "should considering [*sic*] transferring upon his return from leave because he did not support Carouthers," and that Fogarty was "not the 'right color' to work in District 3" and "would like his job better if he transferred." (*Id.*) However, Fogarty returned to work in District 3 in August 1999, remaining under his doctor's care. In October 1999, the day after Fogarty was released from his doctor's care, Brewster issued Fogarty a written reprimand. Brewster cited Fogarty for "insufficient effort," failing to report the "true actions" of another employee "who also refused to support Brewster's choice of political candidates," and making "false, inaccurate or deliberate [*sic*] incomplete statements in an official inquiry." Brewster also cited Fogarty for committing work infractions that included leaving the worksite without authorization, failing to return to work on time after breaks, and failing to complete assignments. (Am. Compl. ¶ 13.)

Fogarty "requested to speak to his union representative" upon receiving the written

reprimand. Brewster responded that Brewster would "have Fogarty fired" by Personnel Director Catherine Hennessey if Fogarty "spoke with his union or anyone in the 11th Ward" about the reprimand. (Am. Compl. ¶ 13.) Nevertheless Fogarty filed a written grievance with Brewster about the reprimand, in which Fogarty complained that he was being discriminated against in the terms and conditions of his employment because of his "race, nationality and sex," and that he was being retaliated against for refusing to support the "choice of political candidates" of Brewster and Mitts. (Am. Compl. ¶ 14.)

Fogarty filed his written grievance on October 29, 1999, the day after receiving Brewster's written reprimand. (Am. Compl. ¶¶ 13-14.) On November 3, 1999, the City terminated Fogarty's employment, citing "attendance" as the reason for termination, although Fogarty "had not used all of the days allocated to him by the City of Chicago." (Am. Compl. ¶ 15.) The labor union representing Department of Streets and Sanitation workers, Local 1001 of the County, Municipal Employees', Supervisors' and Foremen's Union, filed a grievance on Fogarty's behalf on November 17, 1999, complaining that Fogarty had been "discriminated against for political reasons." (Am. Compl. ¶ 16.) However, the City did nothing about the union grievance, although it was "aware of Fogarty's grievances" through "individuals holding policymaking positions with the Department of Streets and Sanitation." (Am. Compl. ¶ 17.)

Fogarty filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 28, 2000. The charge alleged discrimination on the basis of race, and retaliation for engaging in protected activity. The EEOC issued a notice of right to sue on January 22, 2001, and Fogarty filed the present lawsuit within 90 days of receiving the right to sue letter, as required under 42 U.S.C. § 2000e-5(f)(1). (Am. Compl. ¶ 3.)

4

Judge Lindberg's Opinion.

In his opinion, Judge Lindberg specified several particular inadequacies in Fogarty's original Complaint.[1] Judge Lindberg dismissed without prejudice Counts I and VII (discrimination by the City based on plaintiff's political affiliation (§ 1983) and race (§ 1981)) and Count X (retaliatory discharge by the City for complaining about race discrimination (§ 1981)), finding that Fogarty had failed to allege that the City had a discriminatory custom or policy, as required to state a claim under § 1981 or § 1983 against a municipality pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). *Fogarty,* 2001 WL 946477, at ** 3, 5.

Judge Lindberg also dismissed without prejudice Counts IV, V, and VI (claims under § 1983 against the City, Brewster, and Mitts respectively for retaliatory discharge based on Fogarty's filing a grievance about discrimination based on political affiliation), finding that Fogarty had failed to allege that the matters he complained of in his grievance involved a "public concern" under *Connick v. Myers,* 461 U.S. 138, 146 (1983) as opposed to a purely private concern related only to Fogarty personally. *Fogarty* 2001 WL 946477, at * 4.

Judge Lindberg found that Fogarty stated claims in Counts II, VIII, and IX for discrimination by Brewster and Mitts based on plaintiff's political affiliation (§ 1983) and race (§ 1981). He also found that Fogarty stated claims in Counts XI and XII, retaliatory discharge by Brewster and Mitts respectively for complaining about race discrimination (§ 1981). *Id.* at ** 4-5.

---

[1] The fourteen counts of the Amended Complaint are the same as the first fourteen counts of the original Complaint, and are outlined in Appendix A hereto. Fogarty's original Complaint also included claims of retaliation against him for filing a workers compensation claim (Count XV) and for refusing to give false testimony at the disciplinary hearing of a fellow employee (Count XVI). However, Fogarty withdrew those counts prior to Judge Lindberg's ruling (*Fogarty,* 2001 WL 946477, at *7), and they are not included in the Amended Complaint.

On Count XIII, Judge Lindberg dismissed Fogarty's Title VII claim of race discrimination against the City as to claims of discrimination occurring more than 300 days prior to Fogarty's filing of a charge of discrimination with the EEOC. However, Judge Lindberg let the count stand as to the charge of race discrimination for termination of employment, which occurred within 300 days of filing the EEOC charge. *Id*. at * 6.

In Count XIV against the City under Title VII for retaliatory discharge for complaining about race discrimination, Judge Lindberg found that claims of discrimination occurring more than 300 days prior to Fogarty's EEOC filing were part of a "continuing violation" that culminated in Fogarty's termination of employment. Thus, Fogarty stated a claim in Count XIV against the City. *Id*. at * 7.

<u>The revised allegations of the Amended Complaint</u>.

The Amended Complaint reasserts the same fourteen counts that were ruled upon by Judge Lindberg. Presumably in response to Judge Lindberg's *Monell* analysis of Counts I and VII against the City for discrimination based on political affiliation and race, and Count X against the City for retaliatory discharge when plaintiff complained about race discrimination, Fogarty amended each of these counts by adding two new paragraphs to allege that the City has a discriminatory custom or policy. The first addition alleges the City "acted with reckless indifference to Fogarty's rights and/or tacitly authorized the discriminatory practices taken against Fogarty." (Am. Compl. ¶¶ 22, 57, 75.) The second new paragraph alleges the City "has a widespread practice that is so permanent and well-settled that it amounts to a custom of allowing discrimination on the basis of [political affiliation/race] without fear of reprisal." (Am. Compl. ¶¶ 23, 58, 76.)

Fogarty also made three additions to the allegations of facts common to all counts. Fogarty

amended Paragraph 11 of the allegations common to all counts, which previously alleged only that the City subjected Fogarty to discriminatory terms and conditions of employment, to state that the City subjected "the employees who did not support Carouthers, including Fogarty" to such discrimination. (Am. Compl. ¶ 11.)

Fogarty also amended Paragraph 13 of the allegations common to all counts. That paragraph (¶ 16 of the original Complaint) now sets forth Brewster's issuance of the written reprimand, Fogarty's request to speak to his union representative, and Brewster's response that if Fogarty spoke with anyone in his union or the 11th Ward about the reprimand, Brewster would "*go to Catherine Hennessey, Personnel Director, and* have Fogarty fired." (Am. Compl. ¶ 13, emphasis added.) The italicized words were added to that allegation by the Amended Complaint.

The third addition to the facts common to all counts is the allegation that Local 1001 filed a grievance on Fogarty's behalf complaining that Fogarty was discriminated against for political reasons, and that the City was aware of Fogarty's grievances "through individuals holding policymaking positions with the Department of Streets and Sanitation," but the City did nothing about Fogarty's grievances. (Am. Compl. ¶¶ 16-17.)

In response to Judge Lindberg's *Connick* analysis of Counts IV, V, and VI, Fogarty seeks to remedy the First Amendment "public concern" deficiency with the addition of the following allegation: "Fogarty's complaints implicated the public concerns raised in *Shakman v. Democratic Organization of Cook County,* 356 F. Supp 1241 (N.D. Ill. 1972)." (Am. Compl. ¶¶ 38, 44, 49.) In Count IV against the City, Fogarty also adds the two paragraphs discussed above that seek to allege discriminatory custom or policy by the City. (Am. Compl. ¶¶ 40-41.)

In Count XIII alleging Title VII race discrimination against the City, Fogarty has deleted the

reference to discriminatory treatment during employment (*i.e.*, incidents occurring prior to his job termination), and alleges only that he was terminated from employment wrongfully on the basis of race. (Am. Compl. ¶ 91.)

The present motions to dismiss.

The City has moved to dismiss all counts against it: Counts I, IV, VII, X, XIII and XIV. (City's Mot. to Dismiss at 1-2.) Brewster has moved to dismiss Count V against him (Brewster Mot. to Dismiss Count V of Pl.'s First Am. Compl. ("Brewster's Mot. to Dismiss")), and in a footnote, also moves to dismiss Count II as duplicative of Count V. (*Id.* at 1, n. 1.) Mitts has moved to dismiss Counts VI, IX, and XII against her. (Mitts' Mot. to Dismiss at 1.)

## LEGAL STANDARD

The legal standard applicable to a motion to dismiss was stated by Judge Lindberg in his opinion ruling on the previous motions. *Fogarty,* 2001 WL 946477, at * 2. As Judge Lindberg stated, "[I]f it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate." *Id.,* citing *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir. 1995). A plaintiff's complaint can plead conclusions so long as these conclusions provide the defendants at least minimal notice of the claim. *Id.,* citing *Jackson v. Marion County,* 66 F.3d 151, 154 (7th Cir. 1995).

## DISCUSSION

Although the defendants assert a number of arguments for dismissing portions of the Amended Complaint, the major issues presented by the motions to dismiss are whether Fogarty has cured the defects cited by Judge Lindberg regarding pleading a sufficient claim of custom or policy

of the City under *Monell*, and regarding pleading that Fogarty was discharged in retaliation for protesting issues of public concern (*i.e.*, for making statements that constitute protected speech under the First Amendment). The defendants contend that the amended allegations are insufficient to cure these defects.

Allegations against the City in the § 1983 claims.

As Judge Lindberg discussed, Fogarty cannot assert liability of a municipality for a § 1983 claim based on a theory of *respondeat superior*. *Fogarty*, 2001 WL 946477, at * 3, citing *Monell*, 436 U.S. at 691. For a § 1983 claim to stand against the City, Fogarty must allege either that: (1) the City had an express policy that caused a constitutional deprivation when enforced; (2) the City had a widespread practice that was so permanent and well-settled as to constitute a custom or usage with the force of law, even though there was no express municipal policy or law authorizing the practice; or (3) the constitutional injury was caused by a City official who had "final policymaking authority." *Fogarty*, 2001 WL 946477, at * 3, citing *McTigue v. City of Chicago,* 60 F.3d 381, 381 (7th Cir. 1995); *see also, McCormick v. City of Chicago,* 230 F.3d 319, 323-24 (7th Cir. 2000). In his Amended Complaint, as in his original complaint, Fogarty seeks to plead only the second of those methods.

Since *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), it has been established that:

> [a] plaintiff's complaint in a § 1983 municipal liability claim need not meet any heightened pleading standard, but rather must simply set forth sufficient allegations to place the court and defendants on notice of the gravamen of the complaint. *See McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000.) A dismissal is proper only if there is no set of facts consistent with the allegations in the complaint upon which relief could be granted. *See Sledd v. Lindsay,* 102 F.3d 282, 289 (7th Cir. 1996).

9

*Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). The parties dispute the application

of these principles to the allegations of the Amended Complaint. In *McCormick*, the Seventh Circuit

observed:

> Plaintiffs' counsel, the defense bar, and district courts continue to struggle with this
> and other courts' pronouncements as to exactly what a plaintiff bringing a municipal
> liability suit must plead to survive a motion to dismiss–and with reason.

*McCormick*, 230 F.3d at 324, comparing *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir.

1995)(a plaintiff "can plead conclusions") with *Kyle v. Morton High School*, 144 F3d 448, 455 (7th

Cir. 1998)(attaching "bare conclusion" not sufficient). This case reflects that struggle.

Fogarty argues that he has satisfied the notice pleading requirement regarding his terms of

employment with the following four allegations in the allegations common to each count: (a)

Paragraph 9 alleging that Brewster solicited contributions from Fogarty and other District 3

employees for the Carouthers campaign for 29th Ward alderman; (b) Paragraph 10 alleging that

Brewster and Mitts requested that Fogarty take a vacation day to work the 29th Ward on election day;

(c) Paragraph 11 alleging that the City subjected *the employees who did not support Carouthers,*

*including Fogarty,* to terms and conditions of employment different from those of employees who

supported Carouthers or were non-Caucasian (emphasis added); and (d) Paragraph 17 alleging that

the City was aware of Fogarty's grievances through individuals holding policymaking positions with

the Department of Streets and Sanitation, but did nothing; plus the allegation, in each of the four §

1983 claims against the City, that the City has a "widespread practice that is so permanent and well-

settled that it amounts to a custom of allowing discrimination on the basis of affiliation without fear

of reprisal." (Pl.'s Mem. Opp. City at 3-4; Am. Compl. ¶¶ 23, 41, 58, 76.)

In his brief, Fogarty characterizes the conduct by Brewster and Mitts alleged in Paragraphs

9 and 10 as actions taken by "the City, acting through its agent[s]" Brewster and Mitts (Pl.'s Mem. Opp. City at 3-4), which is not what is alleged in the Amended Complaint. However, the contention that the City was acting "through its agents" does not aid Fogarty because it merely asserts a claim of *respondeat superior*, which, as discussed previously, is not sufficient to assert a § 1983 or § 1981 claim against a municipality. *Fogarty*, 2001 WL 946477, at ** 3, 5.

Regarding the allegation in ¶ 17 that the City knew but did nothing about Fogarty's grievances, Fogarty's brief characterizes this paragraph as referencing knowledge and inaction of the City through "individuals holding policymaking positions." (Pl.'s Mem. Opp. City at 4.) Left out of Fogarty's brief is the additional phrase that appears in the Amended Complaint, which asserts that these were "individuals holding policymaking positions *with the Department of Streets and Sanitation*." (Am. Compl. ¶ 17, emphasis added.)

Citing *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001), the City argues that Fogarty's allegation that individuals holding policymaking positions with the Streets and Sanitation Department knew of his grievances is insufficient to hold the City liable, because policymakers in a department do not qualify as policymakers for the City itself. (City Mem. at 5-6.) In *Latuszkin*, the Seventh Circuit held that allegations that the Chicago Police Department and its supervisors turned a blind eye to drinking parties held at police stations did not sufficiently allege the existence of a municipal custom or policy to permit such conduct. There were no allegations that policymakers of the municipality were "the moving force" behind permitting such conduct, or that the conduct was so widespread that municipal policymakers either were or should have been aware of it. The court in *Latuszkin* stated that district supervisors in the police department were not municipal policymakers, and even the Superintendent of Police did not qualify as a policymaker for the City.

250 F.3d at 505, citing *Auriemma v. Rice,* 957 F.2d 397, 399-400 (7th Cir. 1992). The court

concluded that the plaintiff "claimed no more than a policy or custom of the CPD. Nowhere did he

claim a policy or custom of the City." *Latuszkin,* 250 F.3d at 505.

Here, however, Fogarty does allege that the City had a practice and custom of allowing

discrimination on the basis of political affiliation without fear of reprisal (Am. Compl. ¶¶ 23, 41, 58,

76), and alleges in Paragraph 11 that throughout 1999, the City subjected employees who did not

support Carouthers, including Fogarty, to terms and conditions of employment different from those

who supported Carouthers and/or are non-Caucasian. In addition, the Amended Complaint alleges

two separate incidents over a three or four month period in which two supervisors requested that

Fogarty and other employees work for or contribute to the supervisors' political candidate. (Am.

Compl. ¶¶ 9-10.) Fogarty's allegation that his union filed a grievance on his behalf alleging political

discrimination, and the City did nothing about it, while insufficient to show that the decision to fire

him was made by someone with policymaking authority for the City, provides some further support

for the inference that political discrimination was so much a part of City employment as to amount

to a custom or usage. The issue is whether this is enough to state a claim against the City under

§1983.

The Supreme Court, in *Leatherman* and recently in *Swierkiewicz v. Sorema,* —U.S.—, 122

S.Ct 992 (2002), has emphasized that, except where the Federal Rules expressly provide (as in Rule

9), courts may not impose a higher standard than the requirement in Rule 8 of a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The

plaintiff is not required to plead in detail the facts upon which he bases his claim. *Leatherman,* 507

U.S. at 168, quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957). All that is required is to give the

defendant "fair notice of what the [plaintiff's] claims are and the grounds upon which they rest." *Swierkiewicz*, ____U.S.____, 122 S. Ct. at 998.[2]

In *Leatherman*, the Court stated that it was resolving a conflict among the Circuits, comparing the Fifth Circuit's heightened pleading standard for claims against municipalities under § 1983 to the Ninth Circuit's standard that "[A] claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." 507 U.S. at 165, quoting *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988). The Supreme Court reversed the Fifth Circuit's decision affirming the dismissal of a complaint that alleged as the basis of municipal liability the failure of the government bodies (the county and two municipalities) to train the defendant officers. 507 U.S. at 165.

Responding to the argument that allowing lawsuits to go forward on conclusory allegations burdens the courts and encourages unsubstantiated claims, the Court stated that any requirement of greater specificity must be made by amendment of the Federal Rules of Civil Procedure. *Leatherman*, 507 U.S. at168, quoted in *Swierkiewicz*, ____U.S. ____, 122 S.Ct. at 999. "In the absence of such an amendment, federal courts and litigants must rely on summary judgment and

---

[2] Discussing what is sufficient in the context of a prisoner's suit, the Seventh Circuit recently stated:

> Had Higgs merely alleged that the defendants had retaliated against him for filing a suit, without identifying the suit or the act or acts claimed to have constituted retaliation, the complaint would be insufficient because the defendants would not have known how to respond. But Higgs specified both the suit and the act of retaliation . . . and this specification was enough to enable the defendants to file an answer.

*Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman*, 507 U.S. at 168-69.

Thus, while the City cites *Limes-Miller v. City of Chicago,* 773 F. Supp. 1130, 1137 (N.D. Ill. 1991)(Shadur, J.), holding that five incidents in six years of discrimination in promotions by non-policymaking departmental supervisors did not constitute so longstanding and widespread a practice such that knowledge of the practice could be imputed to the City, that decision was made on a motion for summary judgment, presumably after discovery had concluded.

Under the test set by *Leatherman* and *Swierkiewicz*, the Amended Complaint gives the City "fair notice" of what Fogarty's claim is and the grounds upon which it rests. *See Swierkiewicz,* _____U.S. _____, 122 S. Ct. at 999. Whether Fogarty can prove these allegations is not the test on a motion to dismiss. *Id.*[3]

Fogarty's claim alleging that he was terminated in retaliation for filing a grievance against Brewster is more specific. Fogarty alleges a threat by Brewster that, if Fogarty "spoke with his union or anyone in the 11th Ward about the written reprimand" issued by Brewster to Fogarty, Brewster "would go to Catherine Hennessey, Personnel Director, and have Fogarty fired." (Am. Compl. ¶ 13.) Fogarty alleges he responded to this threat by filing "a written grievance with Brewster" complaining about discrimination based on race, nationality, sex, and "refusal to support Brewster and Mitts' choice of political candidates," and that within several days after he filed this grievance "the City of

---

[3] Interestingly, the Seventh Circuit observed in *Auriemma v. Rice,* 957 F.2d 397, 399 (7th Cir. 1992)(a decision that preceded *Leatherman*):

> It would not twist the language to say that for a long time Chicago's policy was to use public employment to reward political friends and punish political enemies, even though state and local law required merit selection for many positions.

Chicago" terminated his employment on the ground of "attendance" even though he had not used all of the days allocated to him. (Am. Compl. ¶¶ 14-15.) The Court must draw all reasonable inferences in favor of the Fogarty. It can be inferred from these allegations that Brewster carried out his threat and had Fogarty fired by "the City of Chicago" on a ground that was a pretext. Again, Fogarty alleges that this was pursuant to a custom or policy by which the City permitted discrimination on the basis of political affiliation without fear of reprisal. This provides "fair notice" of the grounds of Fogarty's claim.

Thus, the City's motion to dismiss Counts I and IV on the ground that they fail to plead a claim sufficient under *Monell* is denied.

The City's liability under § 1981.

The City contends that Fogarty's § 1981 claims alleging race discrimination in terms and conditions of employment (Count VII) and retaliatory discharge for complaining about race discrimination (Count X) fail to state a claim against the City because Fogarty cannot assert a claim against a municipality based on a doctrine of *respondeat superior*, citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735 (1989). (City Mem. at 10-12.) As Fogarty notes, § 1981 was amended in 1991, and that amendment has been construed to provide that a claim may be brought against state actors under § 1981. *Yohanna v. Patla*, 971 F.Supp. 323, 327 (N.D. Ill.1997)(Aspen, J.) However, the Seventh Circuit has stated that a plaintiff claiming a violation of § 1981 must show that the violation was caused by a custom or policy within the meaning of *Monell*. *Looper Maintenance Service, Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999).

As discussed above, the Amended Complaint sufficiently alleges that Fogarty's rights were violated pursuant to a custom or practice of permitting discrimination on the basis of political

15

affiliation without fear of reprisal. The same cannot be said, however, of Fogarty's claims under §

1981 against the City. The common allegations of the Amended Complaint allege one incident in

which Brewster indicated that Fogarty was not the "right color" to work in District 3, and would like

his job better if he transferred (presumably to another City district). (Am. Compl. ¶ 12.) However,

Fogarty continued to work in District 3 until his termination. (*Id.*) The common allegations also

allege that Fogarty's grievance complained of discrimination on the basis of race, nationality and sex.

(Am. Compl. ¶ 14.) The allegations of Count VII and Count X state only that the City treated

Fogarty in a discriminatory way as the result of his race. Even viewing these allegations under the

liberal pleading standards discussed above, there is nothing to give the City notice of the basis of

Fogarty's assertion that there was "a *custom* of allowing discrimination on the basis of race without

fear of reprisal." (Am. Compl. ¶¶ 58, 76, emphasis added.) At this time, after Judge Lindberg's

decision and the taking of certain discovery, Fogarty should have been able to plead enough to give

the City a basis on which to answer Counts VII and X, if, indeed, there was a basis for pleading the

claims. Therefore, Counts VII and X are dismissed with prejudice.

Allegation of a First Amendment "public concern" issue.

Two preliminary arguments made by the defendants may be disposed of, because they were

previously considered by Judge Lindberg.

First, all of the defendants argue that Fogarty's claims labeled "Retaliation in violation of

1983" (Count V against the City, Count V against Brewster, and Count VI against Mitts) should be

dismissed because there is no such cause of action. (City Mem. at 8-9; Def. Brewster's Mot. to

Dismiss at 4; Mem. Supp. Def. Mitts' Mot. Dismiss Am. Compl. ("Mitts' Mem.") at 2-4.) Judge

Lindberg analyzed the same argument raised by the defendants regarding the original complaint, and

concluded that although Fogarty's characterization of his claims as violations of § 1983 "may be somewhat inartful, it is clear from reading the complaint as a whole that he is raising First Amendment claims under § 1983." *Fogarty*, 2001 WL 946477, at * 3.

Secondly, the City and Mitts argue that the claims of retaliatory discharge for complaining about discrimination based on political affiliation in Count IV and VI are merely duplicative of the underlying claims of discrimination on the basis of political affiliation in Counts I and III and of discrimination on the basis of race in Counts VII and IX. However, these claims are not duplicative. Fogarty alleges that the City (Counts I and VII) and Mitts (Counts III and IX) discriminated against him on the basis of political affiliation and race during the period when he was employed. Fogarty separately alleges that he was discharged from employment in retaliation for complaining about the discrimination that occurred during his employment. These are two distinctly different types of claims. Judge Lindberg noted the distinction in discussing the original complaint. *Fogarty,* 2001 WL 946477, at * 4, n.3.[4]

The issue remains, however, whether Fogarty has cured the defect Judge Lindberg found in Fogarty's original Complaint, of failing to demonstrate that his filing of a grievance about discrimination based on political affiliation implicated a matter of public concern. *Fogarty*, 2001 WL 946477, at * 4, citing *Connick v. Myers*, 461 U.S. 138, 146 (1983). Even though a plaintiff's grievance may concern a subject of public interest, it will not amount to speech protected by the First Amendment where its expression addresses only the personal effect on plaintiff. *Fogarty*, 2001 WL

---

[4] However, Judge Lindberg noted that, although Fogarty's complaint alleged retaliation for complaining about discrimination, Fogarty's brief characterized the retaliation as arising out of his political affiliation, a characterization that would in fact have duplicated Count I. Nevertheless, Judge Lindberg confined his analysis to the actual allegations of the complaint, and found no duplication. Fogarty also has not repeated his prior mistake in his present brief.

946477, at * 4, citing *Cliff v. Bd. of School Comm'rs*, 42 F.3d 403, 410 (7ᵗʰ Cir. 1994). As the

Supreme Court stated in *Connick*, "[I]t has been settled that a state cannot condition public

employment on a basis that infringes the employee's constitutionally protected interest in freedom

of expression." 461 U.S. at 142. However, the court must also consider "the common sense

realization that government offices could not function if every employment decision became a

constitutional matter." *Id.* at 143.

In dismissing Fogarty's claim without prejudice, Judge Lindberg stated that "the court must

determine whether the speech at issue implicates a public concern," and determined that Fogarty's

complaint of discrimination based on failure to support a political candidate "indicates that

[plaintiff's] motivation was purely private–to vindicate his rights and resolve a private dispute."

*Fogarty,* 2001 WL 946477, at * 4. Fogarty's Amended Complaint seeks to cure any defect by

alleging in the amended complaint that his complaints of discrimination (presumably the grievance

Fogarty filed on or about October 29, 1999 with Brewster) "implicated the public concerns raised

in *Shakman v. Democratic Organization of Cook County*." (Am. Compl. ¶¶ 38, 44, 49.)[5]

The plaintiffs in the *Shakman* case, 435 F.2d 267 (7ᵗʰ Cir. 1970), were not City employees,

but rather political candidates and voters who opposed the Democratic Party candidates. The

complaint alleged that "officers of the city and county require city and county employees, as a

condition of holding their jobs and drawing their salaries from the public treasuries, to furnish votes,

campaign work, and money to elect candidates chosen by the regular democratic organization, and

---

[5] Fogarty also alleges in the Amended Complaint that his labor union filed a grievance after Fogarty was discharged, complaining that Fogarty "was discriminated against for political reasons." (Am. Compl. ¶ 16.) Because this grievance was not filed by the union until after Fogarty's job was terminated, the local union's grievance cannot be the basis for his claim of retaliatory discharge.

that this practice makes more difficult and often prevents the election of other [opposition] candidates." *Shakman*, 435 F.2d at 268.

The issue is whether the reference to the *Shakman* case permits the Court to conclude that Fogarty has alleged a matter of public concern in both the subject matter and the expression. As Judge Lindberg stated, the court must look at the content, form, and context of Fogarty's grievance to make this assessment. *Fogarty*, 2001 WL 946477, at * 4, citing *Connick* at 147-48. The most important of these factors is content. *Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir. 1994). Fogarty argues that political patronage in public employment is a public concern that persists to the present. (Pl.'s Resp. Opp. Def. Brewster's Mot. Dismiss ("Pl.'s Mem. Opp. Brewster") at 2.) The Supreme Court in *Connick*, while reversing a judgment for the employee, commented that one subject raised by the employee's questionnaire--whether employees felt pressured to work in political campaigns on behalf of particular candidates--did touch upon matters of public concern of interest to the community. 461 U.S. at 149. Construing Fogarty's pleading in the light most favorable to him, it appears he is asserting that his grievance raised that subject of public interest.

However, although a subject may be of public concern, an employee's speech may not be constitutionally protected if it is "both motivated by and framed in terms of his own interest." *Smith*, 28 F.3d at 652. Brewster contends that Fogarty's complaint did not raise a public concern because he was pursuing his private interest in making the grievance. (Brewster Mot. at 6.) However, "the content of some remarks may lift the speech to the level of public concern even if the employee's reasons for speaking out are entirely self-interested . . . ." *Smith*, 28 F.3d at 652, citing prior authority. The defendants have not cited any authority holding that the fact that the manner of expression was a grievance precludes as a matter of law a finding of public concern in the

expression.

The problem with Fogarty's vague pleading is that he fails to provide information about the content, form and context of his grievance to permit an assessment of whether or not, under the standards applicable to pleading, he has sufficiently alleged a claim. It is possible that Fogarty may be able to state a claim, and thus it would be inappropriate to dismiss Fogarty's claim with prejudice without giving him one more opportunity, particularly in light of his recent change of counsel. There does not appear to be any undue prejudice to the defendants from doing so.

When a plaintiff's complaint relates to his employment with a public entity, there is an additional issue of whether the interests of the plaintiff to complain, as a citizen, about matters of public concern outweigh the interest of the public entity as an employer to promote the efficiency of its public services. *Wright v. Illinois Dept. of Children & Family Services,* 40 F.3d 1492, 1501-02 (7th Cir. 1994).[6] Brewster argues that there is no need to reach that test because Fogarty's speech is not a public concern. As discussed above, Fogarty will be permitted an opportunity to replead his claim based on alleged retaliation, and thus, there is no need to consider the balancing issue at this point.

Mitts also argues as to Count VI that Fogarty "does not allege that Mitts had anything to do

---

[6] Balancing the concerns of a complaining citizen against the concerns of the public employer requires consideration of the following factors: (1) whether the plaintiff's complaint threatened to create problems in maintaining discipline by his immediate supervisors or co-workers; (2) whether the plaintiff's employment relationship with his supervisors necessitated personal loyalty and confidence by the plaintiff to refrain from criticizing his immediate supervisors; (3) whether the plaintiff's grievance impeded his ability to perform his daily responsibilities; (4) whether the time, place, and manner of the plaintiff's complaint caused undue disruption to operation of the department; (5) whether the plaintiff's complaint occurred in a context that would justify such an action; (6) whether the plaintiff's complaint concerned a matter on which debate was vital to informed decisionmaking; and (7) whether the plaintiff should be regarded as a member of the general public. *Wright,* 40 F.3d at 1502.

with any alleged retaliation." (Mitts' Mem. at 4.) That contention is incorrect, however. Fogarty alleges that Mitts was a supervisor of District 3 who, along with Brewster, requested that he take a vacation day to work in the 29th Ward on election day. (Am. Compl. ¶¶ 7, 10.) Fogarty's grievance complained that he was being retaliated against for refusing to support Mitts' (and Brewster's) choice of political candidates. (Am. Compl. ¶ 14.) Fogarty further alleges that Mitts retaliated against Fogarty for his complaints about discrimination on the basis of political affiliation by terminating his employment. (Am. Compl. ¶ 50.)

Counts IV, V and VI are again dismissed without prejudice.

Mitts' motion to dismiss Counts IX and XII.

Mitts has renewed her motion to dismiss Count IX (§ 1981 claim alleging race discrimination) and Count XII (§ 1981 claim alleging retaliatory discharge for complaining about race discrimination). (Mitts' Mem. at 5-6.) Judge Lindberg previously rejected Mitts' motion to dismiss those counts of the original complaint. *Fogarty*, 2001 WL 946477, at * 5. The arguments Mitts raises in her memorandum in support of her motion to dismiss the Amended Complaint were rejected previously by Judge Lindberg. However, in her reply memorandum in support of the motion to dismiss as to the amended complaint, Mitts argues that Fogarty eliminated three paragraphs from the original complaint (Compl. ¶¶ 13-15), and by doing so eliminated any factual allegations of discriminatory conduct by Mitts. (Def. Mitts Reply Mem. Supp. Mot. Dismiss Am. Compl. ("Mitts Reply") at 3.) [Dkt # 59.]

The Amended Complaint eliminated allegations concerning a disciplinary hearing against another Department of Streets and Sanitation employee. Judge Lindberg did not rely upon those allegations in ruling that Fogarty stated a claim against Mitts in Counts IX and XII. *Fogarty*, 2001

WL 946477, at * 5. The allegations upon which Judge Lindberg based his decision remain unchanged from the original to the Amended Complaint. *Id.* Thus, Judge Lindberg's ruling disposes of Mitts' motion to dismiss Counts IX and XIII.

<u>City's motion directed to Count XIII and Count XIV</u>.

In Counts XIII and XIV, Fogarty alleges claims against the City under Title VII based on race discrimination and retaliatory discharge. The City renews its argument that all of the events that Fogarty complains of, except the termination itself, occurred more than 300 days prior to his filing of the EEOC claim. (City Mem. at 13.) The City also renews its prior argument that a number of the facts alleged in the amended complaint were not specified in the EEOC charge, and therefore cannot be considered. (*Id.* at 14.) Judge Lindberg considered and ruled upon these arguments. As to events occurring more than 300 days prior to filing the EEOC charge, Judge Lindberg agreed with the City that such allegations could not be considered as to Count XIII regarding Title VII race discrimination, but found that the allegations could be considered, as part of a continuing violation, as to Count XIV regarding retaliatory discharge under Title VII. *Fogarty*, 2001 WL 946477, at ** 6-7. Judge Lindberg also ruled that the allegations of discriminatory conduct in the complaint that were not specified in the EEOC charge were sufficiently "like or reasonably related to the allegations of the underlying EEOC charge" to satisfy the pleading requirements as established in *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir. 1976). *Fogarty*, 2001 WL 946477, at * 7.

In amending the complaint, Fogarty deleted from Count XIII the reference to terms and conditions of his employment, which would have occurred more than 300 days prior to filing the EEOC charge, and revised Count XIII to allege only that the City discriminated against him by

22

terminating him because he is Caucasian. (Am. Compl. ¶ 91.) Thus, the City's motion directed to Count XIII is denied as moot. The City's motion directed to Count XIV is denied for the reasons stated by Judge Lindberg.

## CONCLUSION

For the foregoing reasons, Counts VII and X are dismissed with prejudice; Counts IV, V and VI are dismissed without prejudice; and the motions to dismiss Counts I, II, IX, XII and XIV are denied. Any motion to file a further amended complaint must be made on or before June 3, 2002. A copy of the proposed amended complaint must be attached to the motion. Any further amended complaint shall not renumber the various counts.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED: May 13, 2002**

**Appendix A**
Outline of claims in Amended Complaint

| | | | |
|---|---|---|---|
| Ct I | Against City | Discrimination based on political affiliation, §1983 | Motion to dismiss: denied |
| Ct II | Against Brewster | Discrimination based on political affiliation, §1983 | Motion to dismiss (in footnote): denied |
| Ct III | Against Mitts | Discrimination based on political affiliation, §1983 | |
| Ct IV | Against City | Retaliation in violation of §1983 | Motion to dismiss: granted without prejudice |
| Ct V | Against Brewster | Retaliation in violation of §1983 | Motion to dismiss: granted without prejudice |
| Ct VI | Against Mitts | Retaliation in violation of §1983 | Motion to dismiss: granted without prejudice |
| Ct VII | Against City | Violation of § 1981 based on race | Motion to dismiss: granted. Count VIII dismissed with prejudice |
| Ct VIII | Against Brewster | Violation of § 1981 based on race | |
| Ct IX | Against Mitts | Violation of § 1981 based on race | Motion to dismiss: denied |
| Ct X | Against City | Retaliation in violation of § 1981 | Motion to dismiss: granted. Count X dismissed with prejudice. |
| Ct XI | Against Brewster | Retaliation in violation of §1981 | |
| Ct XII | Against Mitts | Retaliation in violation of §1981 | Motion to dismiss: denied |
| Ct XIII | Against City | Violation of Title VII | Motion to dismiss: denied |
| Ct XIV | Against City | Retaliation in violation of Title VII | Motion to dismiss: denied |